# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| PROVIDENCE TITLE COMPANY | § § § | |
| Plaintiff, | § § | |
| | § | Civil Action No. 4:21-cv-00147 |
| v. | § § | |
| TRULY TITLE, INC., TRACIE L. FLEMING, MARK J. FLEMING, KIM SHEETS-SHEFFIELD, AND GRAHAM HANKS | § § § § § § | |
| Defendants. | § § § | |

## DECLARATION OF DANIEL FOSTER, JR.

In accordance with 28 U.S.C. § 1746, Daniel Foster, Jr. declares, under penalty of perjury, as follows:

1. I am Daniel Foster, Jr. I am over the age of twenty-one (21), of sound mind, and am competent to make this declaration. The information contained herein is within my personal knowledge.

2. I am the Chief Financial Officer, member of the Board of Directors, and a shareholder of Providence Title Company ("Providence"), the plaintiff in the above-captioned lawsuit. From my role with Providence, I know that T. Fleming was the President, a shareholder, and a member of the Providence Board of Directors prior to her resignation from Providence on February 3, 2021.

3. I first learned about the departure of T. Fleming and M. Fleming from Providence after they submitted their resignations on February 3, 2021. Prior to that date, neither T. Fleming

1

91358545v.1

nor M. Fleming told me they were leaving Providence or suggested that they were joining Truly Tile, Inc. ("Truly").

4. As the Chief Financial Officer, I oversee Providence's accounting group and, since 2019, the payroll group too. I am the person who controls access to the company's QuickBooks files. I have full access to those files. Within Providence, I have granted access to other personnel to QuickBooks only on a need-to-access basis. Accordingly, I have granted access to assistants in my group when necessary to be able to input accounting data, run reconciliations, or perform other accounting-related tasks. When granting access, I have only granted access as reasonably necessary for these employees to perform their work. The employees and managers in Providence's field offices are not granted access to QuickBooks. If senior officers, directors, or owners want to obtain financial information from Providence's QuickBooks, they are required to contact me for the information requested. Providence does not share its QuickBooks files externally, except that it has allowed its CPA firm and a consultant-bookkeeper to access the QuickBooks files when necessary to obtain their services.

5. In mid-2019, I participated in the due diligence regarding a proposed transaction between Providence and Truly. I was one of the people for Providence who responded to numerous requests for information from Truly about Providence's business. T. Fleming also handled several responses on behalf of Providence.

6. Truly requested information regarding Providence's finances, offices, employees, salaries, and customers. Providence provided that information that was requested.

7. On behalf of Providence and at Truly's request, I provided Truly with extensive employment-related information for all Providence employees, including payment histories, pay structures, and commission structures. This type of employment-related information is not shared

2

with Providence's employees and managers. Providence does not disclose salary information to its employees except for their own information or to a manager overseeing a particular employee, but only to the extent needed to perform their managerial roles. The type of information provided to Truly was far in excess of what any Providence employee could access, except for senior officers and directors.

8.   Providence also provided Truly access to Providence's QuickBooks files, which included a wide range of Providence financial data, including information on office profitability. Truly had the ability to analyze Providence's finances and profitability from this data, including to generate and run its own reports. Those files and reports are not publicly available and are generally not even available to Providence employees, except in the limited circumstances I described above.

9.   From the discussions I had with Truly representatives during due diligence, I understand that Truly and its consultants spent a significant amount of time reviewing the financial data Providence provided. They had access to this data for months. Truly and its representatives asked me many questions about this data. I also had several conversations with Chris Cranton who was a consultant working for Truly relating to the proposed transaction. Mr. Cranton told me he was the President of Latitude 33 Consulting, which was working on behalf of Truly.

10.   Because the parties had agreed upon the terms of a non-disclosure agreement, I attempted to provide Truly with all of the information that was requested with the understanding that all information provided would be kept confidential and would not be used against Providence.

11.   In the latter half of January, 2021, I participated in a telephone conference with Providence's senior officers to discuss employee salary and payroll information. Dan Foster and T. Fleming participated in that call, too. During the call, we discussed the current salaries of

Providence employees, including whether they should be given raises or additional compensation. T. Fleming reported on the offices in Johnson County (including Burleson) and Southlake. T. Fleming said everyone in Burleson was "fine" and did not need a raise. Only one person in Johnson County was given a raise.

12. Not long after this salary meeting occurred, employees began to leave Providence to join Truly. Every employee in the Old Town (Burleson) and Keller offices left for Truly. All but one employee left from the Burleson Johnson Avenue office to join Truly. All but two employees left the Southlake office for Truly. And the entire Cleburne office has turned in its resignations effective tomorrow, to join Truly.

I have reviewed the foregoing declaration and hereby declare under penalty of perjury that the foregoing is true and correct and within my personal knowledge.

Executed on this 23rd day of February, 2021 in Tarrant County, Texas.

_____
Daniel Foster, Jr.