IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| PROVIDENCE TITLE COMPANY | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 4:21-cv-00147 |
| v. | § | |
| | § | |
| TRULY TITLE, INC., TRACIE L. FLEMING, MARK J. FLEMING, KIM SHEETS-SHEFFIELD, AND GRAHAM HANKS | § § § § | |
| | § | |
| Defendants. | § | |
| | § | |

# ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Before the Court is Plaintiff Providence Title Company's Motion for Preliminary Injunction against Defendants Truly Title, Inc. ("Truly"), Tracie L. Fleming ("T. Fleming"), Mark J. Fleming ("M. Fleming"), Kim Sheets-Sheffield ("Sheffield"), and Graham Hanks ("Hanks") (collectively, "Defendants"). Upon consideration, the Court is of the opinion that the Motion is well-taken and should be granted.

Based on the evidence presented, the Court finds as follows:

1. The Court has jurisdiction over this matter and authority to enter the relief that is being granted in this order.

2. Providence and Truly are parties to a non-disclosure agreement ("NDA") effective April 25, 2019, which remains in effect. Under the terms of that NDA, Providence provided Truly with substantial, confidential information regarding Providence's business, including information regarding its employees, offices, salaries, customers, profitability, and offices. This information

was not public, and was only provided to Truly in accordance with a proposed business transaction between the parties, and only under the NDA. Providence has taken reasonable steps to protect the confidentiality of this information. It qualifies as a Providence trade secret. If known to competitors, this information would have substantial independent value to the competitors to help it compete (unfairly) against Providence. This information would have been highly valuable for any competitors seeking to hire away Providence's key employees.

3. T. Fleming was Providence's President. She was a shareholder and member of Providence's board of directors. When she acquired her shares of stock, T. Fleming agreed to a non-compete, under which she would not compete against Providence for a period of two years following the date of when her stock is repurchased. The non-compete is enforceable, reasonable, reasonable in time, and reasonable in scope. Prior to leaving Providence she had a fiduciary duty not to work for competitors, against the interests of Providence.

4. M. Fleming is T. Fleming's husband. He was a manager for Providence who also owned a community property interest in T. Fleming's shares of stock. He agreed to the same non-compete provision that applies to T. Fleming. The non-compete is enforceable, reasonable, reasonable in time, and reasonable in scope. Prior to leaving Providence she had a fiduciary duty not to work for competitors, against the interests of Providence.

5. Sheffield is a former Providence employee who managed several Providence offices. Prior to leaving Providence she had a fiduciary duty not to work for competitors, against the interests of Providence. She was the manager for several Providence employees who also departed to work for Truly.

6. Hanks is the President of Truly's Texas operations. He was involved in communications that convinced T. Fleming and the other former Providence employees to leave

Providence to join Truly. He began his discussions with T. Fleming while a non-solicitation agreement was in place between Providence and Truly.

7. In January and February 2021, Truly was able to hire away many Providence employees, including Providence's president. More than 20 employees left Providence for Truly. Most of these employees left while T. Fleming and M. Fleming were already under contract to work for Truly, but while they were simultaneously employed by Providence. The departing employees worked for T. Fleming, and for many, M. Fleming too.

8. The mass departure from Providence was the result of a coordinated effort. It was for the benefit of Truly. It resulted in Providence having offices that are now completely vacant or almost vacant. Providence's former employees are now attempting to take Providence's customers too. Providence has suffered significant harm from these events.

9. T. Fleming had a fiduciary duty to Providence not to solicit these employees to leave. Her fiduciary duty also required her to act in Providence's best interest to stop the mass exodus or at least tell her colleagues of the potential harm Providence was facing. Despite many opportunities to work for Providence's interests, she did not do so. She stayed quiet and even facilitated the departure of other employees. T. Fleming breached her fiduciary duties.

10. M. Fleming and Sheffield also breached their duties by coordinating and encouraging Providence employees to leave their employment to join Truly. They also aided and abetted T. Fleming in breaching her fiduciary duties to Providence.

11. Truly and Hanks also aided and abetted the breach of duties to Providence by coordinating this effort.

12. T. Fleming and M. Fleming also breached their non-compete agreements with Providence by accepting employment with a competitor and by assisting that competitor in raiding Providence of key employees and offices.

13. Defendants used Providence's trade secrets to accomplish their goals when pursuing Providence's employees and customers. Defendants had access to all the internal information they needed about Providence's employees, salaries, profitability, and structure to know and determine who to pursue and how to pursue them. Defendants also knew who to avoid to prevent the "cat from being let out of the bag." Defendants successfully pulled off this mass departure with insider help from T. Fleming, M. Fleming, and Sheffield, and by using trade secrets.

Based on the foregoing findings, the Court finds that (a) Providence has established a substantial likelihood of success on its claims for breach of the non-compete, breach of fiduciary duties, aiding and abetting breach of fiduciary duties, and misappropriation of trade secrets, (b) substantial irreparable harm will occur if an injunction is not granted, (c) the balance of the equities favor entry of injunctive relief, and (d) an injunction is in the public interest.

The Court orders that, pursuant to Fed. R. Civ. P. 65, Truly (including its officers, directors, agents, and representatives), T. Fleming, M. Fleming, Sheffield, and Hanks are enjoined from the following conduct:

1. T. Fleming and M. Fleming are enjoined for working from Truly. Truly is enjoined from continuing to employ and pay them for their services.

2. T. Flemming, M. Flemming, and Sheffield are enjoined from sharing Providence trade secrets with Truly, including information regarding Providence employees, salaries, offices, profitability, and customers.

3. Defendants are enjoined from soliciting Providence employees to change employers and from soliciting Providence customers to change to Truly.

4. Defendants are enjoined from using Providence's trade secrets, including any financial, employee, salary, office, customer, or profitability information.

It is further ORDERED pursuant to Federal Rule of Civil Procedure 65(c), that the preliminary injunction shall issue on Providence's posting a bond in the amount of $_____. This order takes effect upon the posting of the bond and shall remain in place until entry of a final judgment in this action, unless the Court orders otherwise.