UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| PROVIDENCE TITLE COMPANY § | |
| § | |
| v. § | CIVIL NO. 4:21-CV-147-SDJ |
| § | |
| TRULY TITLE, INC., ET AL. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Kim Sheets-Sheffield's Amended Motion for Summary Judgment Against Providence Title Company. (Dkt. #219). Sheets-Sheffield argues that she is entitled to summary judgment on all of Providence's claims against her, as well as her counterclaims against Providence. In this order, the Court will only consider Sheets-Sheffield's counterclaims premised on federal law, specifically the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, *et seq.*, and the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, *et seq.* Based on the record evidence and the parties' briefs, the Court concludes that Sheets-Sheffield has failed to establish that she is entitled to relief under either the SCA or the CFAA. The Court will order Sheets-Sheffield to file supplemental briefing explaining why the Court should not issue judgment in favor of Providence.

## I. BACKGROUND

The factual background of this case is detailed in the Court's order on Defendants' motions for summary judgment premised on Providence's federal Defend Trade Secrets Act ("DTSA") claim, and the Court will only briefly summarize it here. (Dkt. #372). Plaintiff Providence and Defendant Truly Title Inc. are competitors in

1

the Texas title insurance market. In April 2019, Truly and Providence commenced negotiating Truly's potential acquisition of Providence. However, the parties were unable to agree to terms and negotiations ceased in November 2019.

Shortly after the breakdown in the parties' negotiations, several Providence employees left Providence to join Truly, including Defendants Tracie Fleming, Mark Fleming, and Kim Sheets-Sheffield—who was a team lead at Providence. Providence alleged that these Defendants, along with Defendants Truly and Graham Hanks—Truly's President of Texas Operations—misappropriated its trade secrets in violation of the DTSA and the Texas Uniform Trade Secrets Act ("TUTSA"), breached numerous duties owed to Providence, and committed several torts. As to Sheets-Sheffield specifically, Providence brought claims for violations of the DTSA, TUTSA, breach of fiduciary duties, knowing participation, tortious interferences with prospective contractual relationship and prospective customer relationships, and civil conspiracy. Sheets-Sheffield moves for summary judgment on all of these claims, as well as her counterclaims for Providence's alleged violations of the SCA, the CFAA, and the Texas Harmful Access by Computer Act ("THACA"), TEX. CIV. PRAC. & REM. CODE § 143.001.[1]

Relevant to her SCA and CFAA claims, Sheets-Sheffield has shown that after she left Providence to join Truly, Providence's Chief Financial Officer, Daniel Foster Jr., accessed her Gmail and LinkedIn accounts via the laptop Providence had

---

[1] The Court granted Sheets-Sheffield's motion for summary judgment as to Providence's DTSA claim, and it denied summary judgment as to her counterclaim for attorney's fees under the DTSA. (Dkt. #372).

provided to Sheets-Sheffield during her employment. Sheets-Sheffield was still logged in to these accounts when she returned the laptop to Providence, which allowed Foster Jr. to easily access and view the emails on her Gmail account, as well as her LinkedIn activity. Providence contends that its review of Sheets-Sheffield's accounts was limited to searching for Providence's information that it believed Sheets-Sheffield had wrongfully shared with Truly. Sheets-Sheffield contests Providence's assertion, arguing that Foster Jr. examined her personal files, including family photos and financial information. She claims that Foster Jr.'s actions "made [her] feel emotionally assaulted," and that "[h]aving to let family members know that their personal financial information and privacy had also been violated was a huge emotional strain for everyone." (Dkt. #219-2 ¶ 15).

Sheets-Sheffield alleges that Providence's actions (through Foster Jr.) violated both the SCA and the CFAA. The Court now considers whether she is entitled to summary judgment on these claims.

## II. LEGAL STANDARD

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd ex rel. Est. of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). If the moving party presents a motion for summary judgment that is properly supported by evidence, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.*,

232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

Because Federal Rule of Civil Procedure 56 requires that there be no "genuine issue of *material* fact" to succeed on a motion for summary judgment, "the mere existence of *some* alleged factual dispute" is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (first emphasis omitted). A fact is "material" when, under the relevant substantive law, its resolution might govern the outcome of the suit. *Id.* at 248. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 476 (citing *Anderson*, 477 U.S. at 248).

"Courts consider the evidence in the light most favorable to the nonmovant, yet the nonmovant may not rely on mere allegations in the pleading; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Int'l Ass'n of Machinists & Aerospace Workers v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir. 2000). If, when considering the entire record, no rational jury could find for the nonmoving party, the movant is entitled to summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### III. DISCUSSION

Sheets-Sheffield argues that Providence, through Foster Jr., violated both the SCA and the CFAA by accessing her Gmail and LinkedIn accounts without her

4

permission. Based on the record evidence presented and the parties' arguments, both counterclaims lack merit. However, rather than dismiss the counterclaims, the Court will require supplemental briefing pursuant to Rule 56(f).

**A. Sheets-Sheffield Failed to Show that the SCA Applies Here.**

"The SCA prohibits unauthorized access to wire and electronic communications in temporary and back-up storage and provides in relevant part:

> [W]hoever—
> (1) intentionally accesses without authorization a *facility* through which an *electronic communication service* is provided; or
> (2) intentionally exceeds an authorization to access that facility;
> and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in *electronic storage* in such system shall be punished . . ."

*Garcia v. City of Laredo*, 702 F.3d 788, 791 (5th Cir. 2012) (quoting 18 U.S.C. § 2701(a)). Thus, to establish liability under the SCA, a plaintiff must show that the defendant (1) "gained unauthorized access to a facility through which electronic communication services are provided (or the access must have exceeded the scope of authority given)" and that it thereby (2) "accessed electronic communications while in storage." *Id.* Section 2707(a) grants a private right of action for "any . . . person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind."

"Electronic communication service" means "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15) (incorporated by reference in 18 U.S.C. § 2711(1) of the SCA). "Electronic Storage" means "(A) any temporary, intermediate storage of a wire or

electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17).

In *Garcia*—a case Sheets-Sheffield cites—the Fifth Circuit considered whether the district court properly granted the defendant's motion for summary judgment on the plaintiff's SCA claim. 702 F.3d at 790–93. The plaintiff, a police dispatcher, claimed that her employer violated the SCA by examining text messages and photographs stored on her cell phone during its investigation into whether she violated police department rules. *Id.* at 790. The court first addressed whether the cell phone constituted a "facility." While the court acknowledged that the SCA has been applied to "providers of a communication service such as telephone companies, Internet or e-mail service providers, and bulletin board services," it noted that such applications did not help the plaintiff because they do not establish that an "individual's computer, laptop, or mobile device fits the statutory definition of a 'facility through which an electronic communication service is provided.'" *Id.* at 792 (cleaned up).

Adopting reasoning from district courts, the Fifth Circuit explained that the "relevant 'facilities' that the SCA is designed to protect are not computers that *enable* the use of an electronic communication service, but instead are facilities that are *operated by* electronic communication service providers and used to store and maintain electronic storage." *Id.* (emphasis added) (cleaned up). Thus, a "home computer of an end user is not protected by the SCA." *Id.* at 793 (quoting Orin S.

6

Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It*, 72 GEO. WASH. L. REV. 1208, 1215 (2004)); *id.* (noting the SCA "makes no mention of individual users' computers" (cleaned up)). Instead, "'[t]he statute envisions a *provider* (the ISP or other network service provider) and a *user* (the individual with an account with the provider), with the *user's communications in the possession of the provider*." *Id.* (quoting Kerr, *supra*, at 1215 n. 47).

The *Garcia* court further explained that even if the cell phone constituted a "facility," the storage of the text messages and pictures on the cell phone did not necessarily constitute "electronic storage":

> "Electronic storage" as defined encompasses only the information that has been stored by an electronic communication service provider. Thus, information that an Internet provider stores to its servers or information stored with a telephone company—if such information is stored temporarily pending delivery or for purposes of backup protection—are examples of protected electronic storage under the statute. But information that an individual stores to his hard drive or cell phone is not in electronic storage under the statute.

*Id.* (citation omitted). The court quoted with approval lower court decisions holding that the SCA does not apply to emails stored only on a laptop. *Id.* (quoting *Hilderman v. Enea TekSci, Inc.*, 551 F.Supp.2d 1183, 1205 (S.D. Cal. 2008) ("E-mails stored on the laptop computer are not in 'temporary, intermediate storage' [as required by § 2510(17)(A)]. Furthermore, the e-mails on the laptop are not stored 'by an electronic communication service for purposes of backup protection' as required by subsection (B)."), and *Bailey v. Bailey*, No. 07–11672, 2008 WL 324156, at *6 (E.D. Mich. Feb. 6, 2008) ("Stored Communications Act protection does not extend to emails and messages stored only on Plaintiff's personal computer.")).

7

Here, while Sheets-Sheffield details the allegedly wrongful actions of Foster Jr. in searching through her personal email, she fails to make essential preliminary showings that (1) the laptop is a "facility through which an electronic communication service is provided" and that (2) the storage of the emails on the laptop constitutes "electronic storage" under the SCA. If either of these elements are missing, her SCA counterclaim fails. However, Providence failed to raise these arguments in its response brief. Therefore, the Court will order the parties to submit supplemental briefing.

**B. Sheets-Sheffield Failed to Show that She Has a Claim Under the CFAA.**

"The CFAA criminalizes various fraudulent or damaging activities related to the use of computers." *Fiber Sys. Int'l v. Roehrs*, 470 F.3d 1150, 1156 (5th Cir. 2006). Section 1030(g) provides a civil cause of action for "[a]ny person who suffers damage or loss by reason of a violation of" the CFAA, but "only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." 18 U.S.C. § 1030(g). Those enumerated factors are as follows:

(I) loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value;

(II) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;

(III) physical injury to any person;

(IV) a threat to public health or safety; [and]

(V) damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security[.]

18 U.S.C. § 1030(c)(4)(A)(i)(I)–(V).

The Fifth Circuit has explained that Section 1030(g) does not limit civil actions to these five subclauses, but only requires that one of the enumerated factors in the subclauses be present in the civil action. *Fiber Sys. Int'l*, 470 F.3d at 1157. Here, only factor I plausibly applies. Thus, to succeed, Sheets-Sheffield must show that she suffered at least a $5,000 loss in a one-year period. "Loss" means "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

Sheets-Sheffield claims that she has been "embarrassed, emotionally assaulted, and harmed by Providence's actions, and has had to take actions to investigate Providence's unlawful access of her Gmail and prosecute these counterclaims against Providence at her own financial expense." (Dkt. #219 at 24–25). In support of this assertion, she points to her declaration, wherein she states that she is a "very private person and the invasion of [her] privacy made [her] feel emotionally assaulted," and that "[h]aving to let family members know that their personal financial information and privacy had also been violated was a huge emotional strain for everyone." (Dkt. #219-2 ¶ 15). She does not argue—much less provide any evidence—that these purported harms have amounted to at least a $5,000 loss in a one-year period.

Sheets-Sheffield thus failed to show that factor I is present here, and she does not suggest that another factor is present. Therefore, she has failed to establish that

9

she may bring a civil action under the CFAA. *See* 18 U.S.C. § 1030(g) ("A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors."). The Court need not reach the substantive provision of the CFAA for which Sheets-Sheffield brings her counterclaim [2] because she has failed to make the preliminary showing that she has a cause of action under the CFAA. However, Providence has not moved for summary judgment on this counterclaim. Nonetheless, based on the foregoing analysis, the Court is considering dismissing this claim under Rule 12(b)(6) or granting summary judgment for Providence under Rule 56(f)(1). The Court will allow the parties an opportunity to respond prior to doing so.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Kim Sheets-Sheffield shall file a single supplemental brief explaining how the requirements of the SCA, as described above and in *Garcia v. City of Laredo*, 702 F.3d 788 (5th Cir. 2012), are met here. In that supplemental brief, Sheets-Sheffield may also address the Court's analysis of her CFAA claim. Sheets-Sheffield's brief shall not exceed **ten pages**, excluding exhibits, and shall be due on or before **May 16, 2024**. Providence may file a single response brief, not to exceed **ten pages**, which must be submitted no later than **May 23, 2024**.

---

[2] Although Sheets-Sheffield does not explicitly provide the subsection on which she relies, she recites the standard for Section 1030(a)(4), which criminalizes "knowingly and with intent to defraud, access[ing] a protected computer without authorization, or exceed[ing] authorized access, and by means of such conduct further[ing] the intended fraud and obtain[ing] anything of value." 18 U.S.C. § 1030(a)(4); *see generally* (Dkt. #219 at 24) (quoting *Hovanec v. Miller*, No. SA-17-CV-766-XR, 2018 WL 1221486, at *5 (W.D. Tex. Mar. 7, 2018)).

**So ORDERED and SIGNED this 2nd day of May, 2024.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE