UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

PROVIDENCE TITLE COMPANY    §
   §
v.    §   CIVIL NO. 4:21-CV-147-SDJ
   §
TRULY TITLE, INC., ET AL.    §

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Kim Sheets-Sheffield's Amended Motion for Summary Judgment, (Dkt. #219), wherein Sheets-Sheffield moves for summary judgment on all of Plaintiff Providence Title Company's claims against her, as well as her counterclaims against Providence. In this order, the Court will only consider Providence's tort claims, including its claims for breach of fiduciary duty, knowing participation in a breach of fiduciary duty, tortious interference with prospective contractual and customer relationships, and civil conspiracy, as well as Sheets-Sheffield's counterclaim against Providence for its alleged violation of the Texas Harmful Access by Computer Act ("THACA"), Tex. Civ. Prac. & Rem. Code § 143.001. For the following reasons, Sheets-Sheffield's motion is **GRANTED** as to Providence's tort claims, and it is **DENIED** as to Sheets-Sheffield's THACA counterclaim.

### I. Background

Kim Sheets-Sheffield is a former employee of Providence—a title insurance company located in Texas. Sheets-Sheffield joined Providence in 2015 as an escrow officer in Providence's Flower Mound office. Providence promoted Sheets-Sheffield to

1

Team Leader for the Flower Mound and Southlake offices in 2017. In that capacity, Sheets-Sheffield managed daily operations for those offices.

On February 1, 2021, Sheets-Sheffield resigned from Providence to join Truly Title Inc., Providence's competitor and former prospective purchaser. Nearly two years before Sheets-Sheffield resigned, in April 2019, Truly and Providence commenced negotiating Truly's potential acquisition of Providence. However, the parties were unable to agree to terms and negotiations ceased in November 2019. Approximately one year after Providence and Truly ceased their acquisition talks, a Truly recruiter, Ray Byrns, engaged Sheets-Sheffield on LinkedIn. Shortly after receiving the message from Byrns, Sheets-Sheffield requested a meeting to discuss the possibility of her joining Truly. In January 2021, Sheets-Sheffield accepted an offer to join Truly, and on February 1, 2021, Sheets-Sheffield submitted her resignation to Providence. Although Sheets-Sheffield originally intended to stay at Providence an additional two weeks, she was instead released that day. After submitting her resignation, Sheets-Sheffield informed her Providence colleagues for the first time that she was leaving Providence.

That evening, Sheets-Sheffield and several of her Providence colleagues attended a happy hour that Sheets-Sheffield had organized about a week before her departure. At Sheets-Sheffield's invitation, Truly's President of Texas Operations, Graham Hanks, also attended the happy hour. In her deposition, Sheets-Sheffield admitted that she invited Hanks so that he could "meet with Providence employees about moving to Truly." (Dkt. #247-2 at 49) (Q: "And the reason Mr. Hanks would be

at that meeting, if he was there, was to meet with Providence employees about moving to Truly, right?" A: "Correct."). All of those employees eventually accepted positions at Truly.

During this time period, Truly had also been actively recruiting Mark Fleming—Providence's Team Leader for Johnson County—and Tracie Fleming—Providence's President and minority shareholder. Unbeknownst to Sheets-Sheffield, the Flemings accepted job offers from Truly in December 2020. They resigned from Providence two days after Sheets-Sheffield.

Following Sheets-Sheffield's and the Flemings' departures, a number of other employees left Providence to join Truly—totaling nearly two dozen in all during the relevant timeframe. According to Providence, Sheets-Sheffield and the Flemings played a role in this exodus by soliciting Providence's employees to join them at Truly. Providence also contends that they took several actions after they had accepted employment offers from Truly but before they left Providence to Truly's benefit and Providence's detriment, such as providing confidential information to Truly and scouting locations to establish an office for Truly's expansion.

Providence contends that Sheets-Sheffield's actions violated both state and federal law. Specifically, it brought claims against her for (1) violation of the federal Defend Trade Secrets Act ("DTSA"),[1] (2) conspiracy to violate the DTSA,[2]

---

[1] The Court granted summary judgment in favor of Defendants on this claim. (Dkt. #372).

[2] The Court dismissed this claim. (Dkt. #371).

3

(3) violation of the Texas Uniform Trade Secrets Act ("TUTSA"), (4) breach of fiduciary duty, (5) knowing participation in a breach of fiduciary duty,[3] (6) tortious interference with prospective contractual relationship, (7) tortious interference with prospective customer relationships, and (8) civil conspiracy. Sheffield argues that she is entitled to summary judgment on all of these claims, as well as her counterclaim for Providence's alleged violation of THACA.[4]

## II. LEGAL STANDARD

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd ex rel. Est. of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). A defendant is entitled to summary judgment if it "identifies a lack of evidence to support the plaintiff's claim on an issue for which the plaintiff would bear the burden of proof at trial," unless the plaintiff proffers "summary judgment evidence sufficient to sustain a finding in plaintiff's favor on that issue." *Smith v. Harris Cnty.*, 956 F.3d 311, 316 (5th Cir. 2020) (cleaned up).

---

[3] Providence originally asserted a cause of action for aiding and abetting a breach of fiduciary duty, but the Court dismissed that claim after determining that no such cause of action exists in Texas. (Dkt. #329). However, the Court permitted Providence to amend its complaint by removing the dismissed aiding-and-abetting cause of action and adding a knowing-participation cause of action. (Dkt. #329).

[4] Sheets-Sheffield also brought counterclaims under the federal Stored Communications Act and the Computer Fraud and Abuse Act, but the Court has dismissed those counterclaims. (Dkt. #381).

Because Federal Rule of Civil Procedure 56 requires that there be no "genuine issue of *material* fact" to succeed on a motion for summary judgment, "the mere existence of *some* alleged factual dispute" is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (first emphasis omitted). A fact is "material" when, under the relevant substantive law, its resolution might govern the outcome of the suit. *Id.* at 248. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citing *Anderson*, 477 U.S. at 248). When a movant shows that the nonmovant failed to proffer sufficient evidence to establish an essential element of its claim, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"Courts consider the evidence in the light most favorable to the nonmovant, yet the nonmovant may not rely on mere allegations in the pleading; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir. 2000). Further, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Malacara v. Garber*, 353 F.3d 393, 405

5

(5th Cir. 2003) (cleaned up). Thus, the nonmovant must cite to the evidence it contends supports its opposition to the motion for summary judgment. *See* FED. R. CIV. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

### III. DISCUSSION

#### A. Evidentiary Objections

Before turning to the merits of the motion, the Court must first address Providence's Motion to Strike Sheets-Sheffield's Summary Judgment Evidence. (Dkt. #244).[5] "The issue at the summary judgment phase is not whether the parties have presented admissible evidence to support their motions for summary judgment, but whether they have shown that they will be able to present admissible evidence at trial." *BP Energy Co. v. Glob. Health Tech. Grp., LLC*, No. H-19-3243, 2020 WL 5947605, at *6 (S.D. Tex. Oct. 7, 2020). Parties may submit declarations in support of their positions on summary judgment. Such declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4).

Providence objects to sentences ten, thirteen, sixteen, and seventeen of Paragraph 6 of Sheets-Sheffield's declaration as inadmissible hearsay. This testimony concerns statements made to Sheets-Sheffield regarding the circumstances of a Providence employee's termination or resignation from Providence and that employee's potential return to Providence. On its face, Sheets-Sheffield's testimony

---

[5] Unless otherwise indicated, Sheets-Sheffield did not respond to the objections.

regarding what she was told appears to be hearsay, and Sheets-Sheffield fails to argue that the statements fall under an exception to the hearsay rule or an applicable exclusion. FED. R. EVID. 801, 803. And since her impression relies solely on what appears to be inadmissible hearsay, it is not grounded in a competent factual basis and is not based on personal knowledge. Therefore, Providence's objection is **SUSTAINED**.

Providence also objects to the fourteenth sentence of Paragraph 6, where Sheets-Sheffield said that she "learned" that the employee described above was involved with a Providence business event. Providence argues that Sheets-Sheffield failed to establish a foundation to support this claim. However, Sheets-Sheffield is permitted to testify about what she knows, and, according to her testimony, she had knowledge regarding the circumstances of the event. Therefore, this objection is **OVERRULED**.

Providence further objects to sentences fifteen and eighteen of Paragraph 6 as speculative and not grounded in fact. In these sentences, Sheets-Sheffield explains that she "felt" that the employee was returning to Providence. Although the foundation for this assertion is thin, Sheets-Sheffield may testify about her impressions. This objection is **OVERRULED**.

Providence objects to the second sentence of Paragraph 15 as speculative and barred by the sham-affidavit rule. In this sentence, Sheets-Sheffield states that she discovered that several of her emails on her Gmail account were missing—but that she did not delete them—and thus she concludes that "someone other than [her]"

must have deleted them. However, in a prior deposition, Sheets-Sheffield testified that she does not know what caused her emails to be deleted and even posited that they may have been inadvertently deleted when she deleted an email app that was connected to her Gmail account. (Dkt. #244-3 at 3). "[T]he sham-affidavit rule is applied sparingly and may be invoked only where there is some inherent inconsistency between an affidavit and a deposition." *Guerrero v. Total Renal Care, Inc.*, 932 F.Supp.2d 769, 776 (W.D. Tex. 2013) (cleaned up). "[C]ourts typically require some explanation for an inconsistency between a deposition and affidavit." *Free v. Wal-Mart La., L.L.C.*, 815 F.App'x 765, 767 (5th Cir. 2020). Here, Sheets-Sheffield's testimony that someone else deleted her emails conflicts with her testimony that she does not know how her emails were deleted and that they were potentially deleted when she deleted an app. She does not attempt to reconcile those positions. Therefore, Providence's objection is **SUSTAINED** as to Sheets-Sheffield's statement in her declaration that "someone other than [her]" deleted her emails.

Providence also objects to sentences ten, twelve, thirteen, fourteen, fifteen, sixteen, and eighteen of Paragraph 15 as being conclusory, not based on personal knowledge, and hearsay. In these sentences, Sheets-Sheffield testifies about the files and emails that Daniel Foster Jr. (Providence's CFO) purportedly accessed on her Providence-issued laptop. Sheets-Sheffield responds that "[she] can testify as to her own personal emails and the information she maintained in those emails." (Dkt. #272 at 3). Sheets-Sheffield's testimony is supported by the forensic analysis performed by her expert, which shows the labels of the folders that Foster Jr. accessed. (Dkt. #219-

5 at 2). In her declaration, Sheets-Sheffield describes the information contained in those files. Her description is based on personal knowledge, and it is not conclusory or hearsay. Therefore, this objection is **OVERRULED**.

## B. Motion for Summary Judgment

Providence asserts several causes of action against Sheets-Sheffield for her conduct leading up to and following her resignation from Providence. This order will address Providence's tort claims, including its claims for breach of fiduciary duty, knowing participation in a breach of fiduciary duty, tortious interference with prospective contractual and customer relationships, and civil conspiracy, as well as Sheets-Sheffield's counterclaim under THACA.

### i. Breach of Fiduciary Duty

Sheets-Sheffield argues that she is entitled to summary judgment on Providence's claim for breach of fiduciary duty. To succeed on a breach-of-fiduciary-duty claim, a plaintiff must establish (1) a fiduciary relationship existed between the parties, (2) the defendant breached his fiduciary duty, and (3) the breach injured the plaintiff or benefited the defendant. *Zhu v. Lam*, 426 S.W.3d 333, 339 (Tex. App.—Houston [14th Dist.] 2014, no pet.). "When a fiduciary relationship of agency exists between employee and employer, the employee has a duty to act primarily for the benefit of the employer in matters connected with his agency." *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 510 (Tex. App.—Houston [1st Dist.] 2003, no pet.). A fiduciary also owes the duty "not to compete with the principal on his own account in matters relating to the subject matter of the agency[,] the duty to deal fairly with the principal in all transactions between them[,] [and the] duty to deal openly with the

employer and to fully disclose to the employer information about matters affecting the company's business." *Id.*

At the same time, however, "[a] fiduciary relationship . . . does not preclude the fiduciary from making preparations for a future competing business venture; nor do such preparations necessarily constitute a breach of fiduciary duties." *Id.* "This is because an employer's right to demand and receive loyalty must be tempered by society's legitimate interest in encouraging competition." *Id.* Thus, "[a]n at-will employee may properly plan to compete with his employer, and may take active steps to do so while still employed. The employee has no general duty to disclose his plans and may secretly join with other employees in the endeavor without violating any duty to the employer." *Id.* (citation omitted). However, even an at-will employee "may not (1) appropriate the company's trade secrets; (2) solicit his employer's customers while still working for his employer; (3) solicit the departure of other employees while still working for his employer, or (4) carry away confidential information, such as customer lists." *Id.* at 512.

Providence argues that despite being an at-will employee, Sheets-Sheffield owed it a fiduciary duty which she breached by working with Truly to find office space and by helping Truly solicit Providence's employees. Providence avers that Sheets-Sheffield's conduct went beyond mere preparation to join a competitor, instead constituting a breach of her duty to Providence.

The evidence shows that, after Sheets-Sheffield accepted a job offer from Truly but while she still worked at Providence, Sheets-Sheffield and Hanks (Truly's

President of Texas Operations) spoke about leasing office space for six employees whom Sheets-Sheffield "hop[ed]" she would be able to recruit from Providence once she began working at Truly. (Dkt. #247-2 at 44–45). Sheets-Sheffield further provided Hanks with "general" compensation information for those employees. (Dkt. #247-2 at 28, 33) (Q: "And during the course of discussion with Mr. Hanks, you shared with him the compensation information for the people on your team that you hoped would move with you to Truly, correct?" A: "Yes."). Sheets-Sheffield explained that she never provided Truly with the salaries Providence paid the employees, but instead only provided Truly the payment structures (i.e., *how* the employees were compensated). (Dkt. #247-3 at 16). Hanks acknowledged that Sheets-Sheffield provided him this compensation information while she was still employed by Providence. (Dkt. #247-5 at 5). Sheets-Sheffield also told Hanks the type of computer equipment those employees desired, should they join Truly. (Dkt. #247-2 at 28).

Notwithstanding these actions and her "hope" that she could recruit Providence's employees to Truly, Sheets-Sheffield did not inform the employees of her decision to leave Providence and join Truly until *after* she resigned from Providence on February 1. (Dkt. #219-2 ¶ 7). When she submitted her resignation, Sheets-Sheffield intended to remain at Providence for an additional two weeks, but she and Providence's CEO, Dan Foster Sr., determined that her resignation would be effective immediately. (Dkt. #219-2 ¶ 8). That evening, Sheets-Sheffield introduced several of Providence's employees to Hanks at a happy hour she had organized before she resigned. (Dkt. #247-2 at 46–47). Sheets-Sheffield admits that she invited Hanks

to the happy hour so that he could meet with Providence's employees about joining Truly. (Dkt. #247-2 at 48–49). However, it is undisputed that this event took place after Sheets-Sheffield no longer worked at Providence.

Sheets-Sheffield is entitled to summary judgment on this claim because, even assuming that she owed Providence a fiduciary duty, her conduct was lawful.[6] As an at-will employee, Sheets-Sheffield was free to "plan to compete with [Providence]," as well as "take active steps to do so while still employed"—which would at least include searching for potential office space to perform one's duties. *Abetter*, 113 S.W.3d at 510; *see id.* at 511 (affirming the jury's verdict that defendant did not breach his fiduciary duty, even though—while still employed with the former employer—he incorporated his competing company, obtained permits, obtained insurance, and had been told by several employees that they intended to join him). Sheets-Sheffield had no duty to inform Providence that she intended to resign and join Truly, and she was even entitled to "secretly join with other employees in the endeavor without violating any duty." *Id.* at 510. Here, Sheets-Sheffield did not go so far as to join with other employees—she merely gave Truly information that could be helpful to recruit them.

---

[6] Sheets-Sheffield contends that she did not owe Providence a fiduciary duty because she was only an at-will employee. "It is generally true that employees are not fiduciaries of their employers simply by virtue of the employment relationship." *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 216 (5th Cir. 2018) (citing *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 202 (Tex. 2002)). However, "[a]ny employee who occupies a position of trust owes fiduciary duties to his employer." *Pfeiffer v. Ajamie PLLC*, 469 F.Supp.3d 752, 761 (S.D. Tex. 2019) (citing *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2019)). As Team Leader for Providence's Flower Mound and Southlake offices, it is at least arguable that Sheets-Sheffield had a fiduciary relationship with Providence. And, in any event, "under common-law principles of agency, employees do owe certain limited fiduciary duties to not compete with their employers." *D'Onofrio*, 888 F.3d at 216.

But Providence has presented no evidence that Sheets-Sheffield or Truly, relying on the information Sheets-Sheffield provided, solicited any employee while Sheets-Sheffield still worked for Providence. In fact, the evidence shows that she did not even tell her coworkers that she was leaving Providence until after she resigned. And "once an employee resigns, [s]he may actively compete with h[er] former employer. . . . There is nothing legally wrong in engaging in such competition or in preparing to compete before the employment terminates." *Id.* (cleaned up).[7]

In sum, the record is void of any evidence that Sheets-Sheffield went beyond lawful preparation to compete with Providence before her employment ended. She did not solicit employees while she worked at Providence or engage in substantial preparatory steps such that she could be liable for breach of fiduciary duty. And all the conduct that occurred after she resigned from Providence—including soliciting Providence's employees and acquiring their business for Truly—is lawful competition in which workers are permitted to engage once they resign from their previous employment. That Sheets-Sheffield's lawful departure had a negative effect on Providence is insufficient to mount a claim for breach of fiduciary duty, as "the possibility of crippling, or even destroying, a competitor is inherent in a competitive

---

[7] Providence also argues that Sheets-Sheffield breached her duty by "migrating Providence's client list and pipeline business over to Truly" once she began working for Truly. (Dkt. #247 at 19). For example, it argues that Sheets-Sheffield breached her duty by emailing solicitations announcing "Same team, just new company." (Dkt. #247 at 20). Providence also provides evidence that Sheets-Sheffield emailed certain Providence information to Truly. (Dkt. #250-5). However, all of these emails were sent after Sheets-Sheffield resigned from Providence, when she was entitled to "actively compete" against Providence. *Abetter*, 113 S.W.3d at 510.

market." *Id.* Therefore, Sheets-Sheffield is entitled to summary judgment on this claim.

### ii. Knowing Participation

Providence further claims that Sheets-Sheffield is liable for knowingly participating in Mark Fleming's and Tracie Fleming's alleged breaches of fiduciary duties. This cause of action requires Providence to prove: "(1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship." *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) (citing *Cox Tex. Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 721–22 (Tex. App.–Austin 2001, no pet.)).

Sheets-Sheffield argues that she is entitled to summary judgment because Providence has not provided any evidence that she participated in any way in Mark's or Tracie's decisions to leave Providence for Truly or in their conduct when they did so—or that she even knew that they were planning to resign and join Truly. Sheets-Sheffield avers that she could not have been aware that she was participating in a breach of fiduciary duty because she had no knowledge that a breach was even occurring. She further contends that even if she knew that the Flemings owed Providence fiduciary duties, she was entitled to leave Providence for Truly and to take preparatory steps to do so.

Providence failed to respond to Sheets-Sheffield's motion for summary judgment on this claim. Pursuant to Local Rule CV-7(d), a "party's failure to oppose a motion . . . creates a presumption that the party does not controvert the facts set

out by movant and has no evidence to offer in opposition to the motion." In any event, no evidence suggests that Sheets-Sheffield was aware that the Flemings intended to join Truly—let alone that she helped them leave and take employees and clients with them, knowing that she was participating in a breach of fiduciary duty (to the extent a breach occurred). Therefore, Sheets-Sheffield is entitled to summary judgment on this claim.

### iii. Tortious Interference with Prospective Business Relationships

Providence also asserts that Sheets-Sheffield tortiously interfered with Providence's prospective contractual and customer relationships ("business relations") by soliciting Providence's employees and concurrently acquiring those employees' clients for Truly.[8] To succeed on a claim for tortious interference with a prospective contractual or business relation, the plaintiff must show that: "(1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the

---

[8] In its complaint, Providence alleges that Sheets-Sheffield tortiously interfered with the prospective contractual relationship between Providence and a third-party interested purchaser. In her motion, Sheets-Sheffield argues that Providence has no evidence supporting this claim. Providence does not controvert Sheets-Sheffield's argument, nor does it provide any supporting evidence. Therefore, Sheets-Sheffield is entitled to summary judgment on Providence's claim premised on her alleged tortious interference with the prospective contractual relationship between Providence and the interested buyer. *See Celotex*, 477 U.S. at 322 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result." *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

Sheets-Sheffield is entitled to summary judgment on this claim because Providence has failed to proffer evidence showing that she engaged in independently tortious or unlawful conduct. The Texas Supreme Court has explained that:

> to recover for tortious interference with a prospective business relation a plaintiff must prove that the defendant's conduct was independently tortious or wrongful. By independently tortious we do not mean that the plaintiff must be able to prove an independent tort. Rather, we mean only that the plaintiff must prove that the defendant's conduct would be actionable under a recognized tort.

*Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001).

As explained herein, Providence has failed to present sufficient evidence to demonstrate a genuine issue of material fact as to any of its tort claims against Sheets-Sheffield. Thus, it has failed to proffer evidence showing that she engaged in any "actionable [conduct] under a recognized tort" such that her conduct was "independently tortious or wrongful." *Id.* Therefore, Sheets-Sheffield is entitled to summary judgment on this claim. *See id.* at 728 (granting judgment for defendant when plaintiffs presented "no evidence" that defendant engaged in "illegal or tortious" conduct); *id.* at 727 ("[H]arm that results only from lawful competition is not compensable by the interference tort.").

### iv. Civil Conspiracy

Providence finally asserts that Sheets-Sheffield is liable for civil conspiracy, which requires Providence to establish: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more

unlawful, overt acts; and (5) damages as the proximate result." *Agar Corp., Inc. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019) (cleaned up). "[A] defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). When the underlying claim fails, so too does the derivative civil conspiracy claim. *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 930–31 (Tex. 2010); *see also Tummel v. Milane*, 787 F.App'x 226, 227 (5th Cir. 2019) (explaining that, when plaintiffs fail to state a claim for any underlying tort under Texas law, their claims for civil conspiracy likewise fail).

Providence asserts that Sheets-Sheffield conspired with other Defendants to breach fiduciary duties and misappropriate trade secrets. However, as explained in this order and other orders issued on this day, Providence has failed to show that there is a genuine issue of material fact that Sheets-Sheffield committed or participated in any of the alleged underlying torts. Since Providence failed to proffer evidence showing that Sheets-Sheffield conspired with another Defendant to further an underlying tort, its civil conspiracy claim fails. *See Crossroads Hospice, Inc. v. FC Compassus, LLC*, 606 S.W.3d 294, 307 (Tex. App.—Houston [1st Dist.] 2020, no pet.) ("Because Compassus has not met its burden on its underlying claims of knowing participation of breach of fiduciary duty or tortious interference against Crossroads, its conspiracy claim fails."), *judgment vacated but not withdrawn*, 2020 WL 3866902 (Tex. App.—Houston [1st Dist.] July 9, 2020). Therefore, Sheets-Sheffield is entitled to summary judgment.

### v. Texas Harmful Access by Computer Act

Lastly, Sheets-Sheffield moves for summary judgment on her counterclaim against Providence pursuant to THACA. THACA provides a civil cause of action to "[a] person who is injured or whose property has been injured" by a violation of Chapter 33 of the Penal Code "if the conduct constituting the violation was committed knowingly or intentionally." TEX. CIV. PRAC. & REM. CODE § 143.001(a). Chapter 33 of the Penal Code states that "[a] person commits an offense if the person knowingly accesses a computer, computer network, or computer system without the effective consent of the owner." TEX. PENAL CODE § 33.02(a). To succeed on this claim, the owner must show that the other party "knowingly accessed a computer, computer network, or computer system, knowing that this act was without the effective consent of the owner." *Muhammed v. State*, 331 S.W.3d 187, 192 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

"Access" means "to approach, instruct, communicate with, store data in, retrieve or intercept data from, alter data or computer software in, or otherwise make use of any resource of a computer, computer network, computer program, or computer system." TEX. PENAL CODE § 33.01(1). "Computer network" means "the interconnection of two or more computers or computer systems by satellite, microwave, line, or other communication medium with the capability to transmit information among the computers." *Id.* § 33.01(5). "Effective consent" is defined to exclude circumstances where the computer, computer network, or computer system is "used for a purpose other than that for which the consent was given." *Id.* § 33.01(12)(E).

18

Sheets-Sheffield has shown that, after she left Providence to join Truly, Providence's Chief Financial Officer, Daniel Foster Jr., accessed her Gmail and LinkedIn accounts via the laptop Providence had provided to Sheets-Sheffield during her employment. Sheets-Sheffield was still logged-in to these accounts when she returned the laptop to Providence, which allowed Foster Jr. to easily access and view the emails on her Gmail account, as well as her LinkedIn messages. Providence contends that its review of Sheets-Sheffield's accounts was limited to searching for Providence's information that it believed Sheets-Sheffield had wrongfully shared with Truly. Sheets-Sheffield contests Providence's assertion, arguing that Foster Jr. examined her personal files, including family photos and financial information. Sheets-Sheffield alleges that Providence's actions (through Foster Jr.) violated THACA.

Foster Jr. acknowledges that he "accessed" Sheets-Sheffield's Gmail account and that he viewed and took screenshots of certain emails and LinkedIn activity. (Dkt. #247-1 ¶¶ 7–11). However, Providence argues that Foster Jr. had Sheets-Sheffield's effective consent to do so, pursuant to Providence's computer usage policies. Those policies state that "[a]ll communications, data, and information created on, received through, or sent over Providence Title information resources (including the Internet/intranet, phones, e-mail, and instant messaging (IM) systems) are the property of Providence Title." (Dkt. #247-1 at 48). "Information resources include anything used to process electronic information," including "Software . . .

ranging from large e-mail systems to small word processing macros." (Dkt. #247-1 at 48).

The policies further provide that "[u]sers have no rights to, title on, interest in or ownership of such information, nor should they have any expectation of privacy or confidentiality on any Providence Title information system." (Dkt. #247-1 at 48). Finally, they state that "Providence Title management reserves the right to access and monitor all communications and electronic files." (Dkt. #247-1 at 50).

Sheets-Sheffield does not dispute that these policies applied to her. Nor does she dispute that her emails and LinkedIn activity were "communications, data, [or] information created on, received through, or sent over Providence Title information resources." By using Providence's computer to access her Gmail and LinkedIn accounts, there is at least a material question as to whether Sheets-Sheffield effectively consented to the policies that allowed Providence to "access and monitor all communications" on such systems, and, if she had not effectively consented, whether Foster Jr. was aware that she had not. Thus, Sheets-Sheffield has not shown that she is entitled to judgment as a matter of law on this counterclaim, as she has failed to show that Foster Jr. "knowingly accessed [her accounts], knowing that this act was without the effective consent of the owner." *Muhammed*, 331 S.W.3d at 192. Therefore, Sheets-Sheffield is not entitled to summary judgment on her THACA counterclaim.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Sheets-Sheffield's Amended Motion for Summary Judgment, (Dkt. #219), is **GRANTED in part** and **DENIED**

**in part**. Specifically, the motion is **GRANTED** as to Providence's claims for breach of fiduciary duty, knowing participation, tortious interference with prospective contractual and customer relationships, and civil conspiracy. Those claims are **DISMISSED**. The motion is **DENIED** as to Sheets-Sheffield's THACA counterclaim.

It is further **ORDERED** that Providence's Motion to Strike Kim Sheets-Sheffield's Summary Judgment Evidence, (Dkt. #244), is **GRANTED in part** and **DENIED in part**. The evidence for which the Court sustained Providence's objections, *see supra* Section III.A, is **STRICKEN**.

**So ORDERED and SIGNED this 22nd day of August, 2024.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE