UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| PROVIDENCE TITLE COMPANY | § | |
| | § | |
| v. | § | CIVIL NO. 4:21-CV-147-SDJ |
| | § | |
| TRULY TITLE, INC., ET AL. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Providence Title Company alleges that Defendants Truly Title, Inc., Graham Hanks (Truly's President of Texas Operations), Tracie Fleming, Mark Fleming, and Kim Sheets-Sheffield misappropriated its trade secrets in violation of the Texas Uniform Trade Secrets Act ("TUTSA"), TEX. CIV. PRAC. & REM. CODE § 134A.001, *et seq*. All Defendants have moved for summary judgment on this claim. (Dkt. #217, #218, #219, #258, #265). The Court previously granted summary judgment for all Defendants on Providence's federal Defend Trade Secrets Act ("DTSA") claim, 18 U.S.C. § 1836, which is premised on the same facts as its TUTSA claim. *See Providence Title Co. v. Truly Title, Inc.*, No. 4:21-CV-147, 2024 WL 1932418 (E.D. Tex. May 2, 2024). For the same reasons Providence's DTSA claim failed, so too does its TUTSA claim.

### I. BACKGROUND

**A. Factual Background**

Providence and Truly are competitors in the Texas title insurance market. In April 2019, Truly and Providence commenced negotiating Truly's potential acquisition of Providence. The parties entered into a nondisclosure agreement ("NDA"), whereby the parties agreed to keep confidential certain information

1

disclosed for the purpose of negotiating. Truly also agreed to a non-solicitation agreement that restricted its ability to solicit Providence's employees. Pursuant to these agreements, Providence supplied Truly with confidential and proprietary information. However, the parties were unable to agree to terms and negotiations ceased in November 2019.

According to Providence, after the breakdown in the parties' negotiations, Truly began to use the information Providence provided to solicit Providence's employees and customers. Specifically, less than one year after Providence and Truly ceased their acquisition talks, Truly began discussing with Defendants Tracie Fleming and Mark Fleming the possibility of their leaving Providence to work for Truly. At the time, Tracie Fleming was Providence's President and Mark Fleming was Providence's Team Leader for operations in Johnson County, Texas. Unknown to Providence, Truly had entered into employment agreements with Tracie and Mark Fleming in December of 2020. Providence did not learn of Truly's agreements with Tracie and Mark Fleming until the Flemings resigned from their positions with Providence on February 3, 2021. Around the same time, Defendant Kim Sheets-Sheffield, another one of Providence's Team Leaders, also left Providence to work for Truly.

The departure of these key employees was accompanied by an exodus of Providence personnel to Truly from several of Providence's North Texas offices. In total, nearly two dozen Providence employees joined Truly during the relevant timeframe. Providence alleges that Truly successfully poached its employees and

customers and targeted for expansion the locations where Providence was profitable by misappropriating the following alleged trade secrets: (1) its customer lists; (2) its employee compensation information; and (3) its branch-specific financial information, such as certain locations' profits and losses ("P&L").

Providence claims that Truly acquired its customer lists from Tracie Fleming. Shortly before her departure from Providence and the commencement of her employment with Truly, Tracie Fleming accessed Providence's "at risk" report and its "business source" report. Providence's at risk report records sources of business that had not opened new orders in the preceding three months, thus enabling Providence to monitor its referral sources and ensure it retains their business. The business source report is Providence's master customer list, which records all sources of business. According to Providence, Tracie Fleming had not accessed the at risk report in nearly three years and had not accessed the business source report in over one year. She also accessed a DropBox login page and a USB device around the same time she reviewed the at risk report. However, Providence's forensic analysis failed to yield any evidence that Tracie Fleming actually took the customer lists or shared them with Truly. Nonetheless, Providence claims Defendants used these lists to target its customers.

Providence further claims, and the evidence shows, that Truly received Providence's other purported trade secrets from Tracie Fleming and Sheets-Sheffield, as well as directly from Providence during the course of the acquisition negotiations. Before leaving Providence, Sheets-Sheffield sent a text message to Graham Hanks,

providing him with "general information" concerning the "type of compensation that [her] team members would want to receive" if they went to Truly. (Dkt. #296-60 at 20). Tracie Fleming provided Hanks with similar compensation information, and she also shared financial information for certain Providence branch locations. (Dkt. #296-30 at 47) (testifying that she provided Hanks "[w]hat [she] believed would be . . . good offers"); (Dkt. #296-30 at 24) (testifying that she "gave [Hanks] rounded numbers of percentage increase for [her] Johnson County operation"). Providence alleges that Truly was then able to use this information along with the files Providence provided during the acquisition negotiations to solicit Providence's employees and customers and to target profitable locations for expansion. Providence also contends that Sheets-Sheffield and the Flemings assisted Truly in soliciting Providence employees and customers.

### B. Procedural Background

Shortly after the commencement of this suit, Providence moved for a preliminary injunction to "enjoin all Defendants from using any of Providence's trade secrets, including its data regarding finances, employee[s], offices, salaries, and customers, or publicly disclosing such information." (Dkt. #8 at 15). Providence principally focused on its compensation and branch-specific financial information.

The Court denied the motion for preliminary injunction as to Providence's misappropriation claim. The Court held that this information does not constitute trade secrets, but instead "constitute[s] the types of generic business data kept by companies that, while often considered confidential, do[es] not provide any independent economic value that is derived from being kept secret"—an essential

4

element of a misappropriation claim. *Providence Title Co. v. Truly Title, Inc.*, 547 F.Supp.3d 585, 610 (E.D. Tex. 2021). The Court explained that "whether the information Fleming and [Sheets-]Sheffield provided to Truly has any economic value at all is wholly contingent on the relative economic value and performance of the Providence employees in question and whether the use of the information results in the successful solicitation of those employees. Information that depends entirely on other factors for its economic value cannot be said to have independent economic value." *Id.* at 611.

After the Court ruled on the motion for preliminary injunction, robust motion practice ensued. In a prior Memorandum Opinion and Order, the Court granted summary judgment for Defendants on Providence's DTSA claim. *See Providence Title*, 2024 WL 1932418. The Court now considers whether Defendants are likewise entitled to summary judgment on Providence's TUTSA claim.[1]

## II. LEGAL STANDARD

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd ex rel. Est. of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). A defendant is entitled to summary judgment if it "identifies a lack of evidence to support the plaintiff's claim on an issue for which the plaintiff would bear the burden of proof at trial," unless the

---

[1] In addition to its misappropriation claim, Providence also asserted that all Defendants attempted and conspired to misappropriate its trade secrets in violation of 18 U.S.C. § 1832. However, the Court sua sponte dismissed those claims because Section 1832 does not confer a private right of action. (Dkt. #371).

5

plaintiff proffers "summary judgment evidence sufficient to sustain a finding in plaintiff's favor on that issue." *Smith v. Harris Cnty.*, 956 F.3d 311, 316 (5th Cir. 2020) (cleaned up).

Because Federal Rule of Civil Procedure 56 requires that there be no "genuine issue of *material* fact" to succeed on a motion for summary judgment, "the mere existence of *some* alleged factual dispute" is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (first emphasis omitted). A fact is "material" when, under the relevant substantive law, its resolution might govern the outcome of the suit. *Id.* at 248. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citing *Anderson*, 477 U.S. at 248). When a movant shows that the nonmovant failed to proffer sufficient evidence to establish an essential element of its claim, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"Courts consider the evidence in the light most favorable to the nonmovant, yet the nonmovant may not rely on mere allegations in the pleading; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Compania Mexicana de Aviacion, S.A.*

*de C.V.*, 199 F.3d 796, 798 (5th Cir. 2000). Further, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (cleaned up). Thus, the nonmovant must cite to the evidence it contends supports its opposition to the motion for summary judgment. *See* FED. R. CIV. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

### III. DISCUSSION

#### A. Evidentiary Objection

Before turning to the merits of the motions, the Court must first address Hanks and Truly's (the "Truly Defendants") objection to the deposition testimony of Tom Berry—an employee of the third-party that contemplated buying Providence after the Truly-Providence negotiations fell through. (Dkt. #317). According to Berry, the third-party decreased its valuation of Providence after a significant number of Providence's employees joined Truly. In its sur-reply in opposition to the Truly Defendants' motion, Providence uses Berry's testimony to show that it suffered an injury in the form of a decreased offer from the third-party due to Defendants' actions. The Truly Defendants object to Berry's testimony on numerous grounds, none of which has merit.

First, the Truly Defendants object that Berry is not an expert witness and thus he cannot testify as to the impact the employees' departures had on Providence's valuation. They argue that Berry's lay opinion on the valuation is inadmissible and that he has not established a basis for concluding that Providence's valuation

7

diminished. However, Berry is not offering an expert opinion on the actual decrease in value Providence suffered because of its employees' departures, but rather on how the third-party perceived the effect of those employees' departures. The Truly Defendants do not challenge Berry's familiarity with the third-party's internal communications and valuation of Providence—i.e., what it was willing to pay, notwithstanding what Providence might have actually been worth. Such testimony is admissible.

The Truly Defendants also challenge Berry's testimony on the ground that the third-party never made an official offer for the purported original valuation—only for the valuation it ascribed after the employees left. In essence, the Truly Defendants argue that Providence cannot show that it was injured because there is no evidence that the third-party ever decreased its offer. However, Berry's testimony is still relevant because it demonstrates that the third-party perceived that Providence was less valuable after the employees left. The fact that Providence never received an offer for the original amount might be a consideration for the appropriate award of damages, but it does not make Berry's testimony irrelevant or inadmissible.

The Truly Defendants finally argue that Berry's testimony violates the best evidence rule. They argue that the best evidence of Providence's valuation is not Berry's testimony, but rather the valuation that Dan Foster Sr. used when he sold his shares after Providence rejected the third-party's offer. The Truly Defendants misunderstand the best evidence rule. This rule, Federal Rule of Evidence 1002, provides that "[a]n original writing, recording, or photograph is required in order to

8

prove its content unless these rules or a federal statute provides otherwise." The best evidence rule has nothing to do with the grounds of the Truly Defendants' objection. They are not challenging the admissibility of a writing, recording, or photograph; rather, they simply argue that other evidence is more credible and should be given more weight. But that contention does not go to the admissibility of Berry's deposition.

In sum, the Truly Defendants have failed to show that Berry's testimony is inadmissible. Therefore, the Truly Defendants' objection is **OVERRULED**.

**B. Motion for Summary Judgment**

Pursuant to TUTSA, an owner of a trade secret that is misappropriated may bring a civil action for injunctive relief and/or damages. TEX. CIV. PRAC. & REM. CODE §§ 134A.003(a), 134A.004(a). To succeed on a TUTSA claim, a plaintiff must show that: "(1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) the defendant *used* the trade secret without authorization from the plaintiff." *CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022) (per curiam) (quoting *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 325 (5th Cir. 2018)). The elements of a cause of action under TUTSA are identical to the elements of a cause of action under the DTSA. *See id.* (considering causes of actions under both the DTSA and TUTSA, but only providing one test).

A "trade secret" includes "all forms and types of information, including business, scientific, technical, economic, or engineering information" (1) that the owner has taken reasonable measures to keep confidential and (2) that derive

9

independent economic value, actual or potential, from not being generally known by or readily accessible to the public. TEX. CIV. PRAC. & REM. CODE § 134A.002(6); *see also CAE Integrated*, 44 F.4th at 262 ("A trade secret is information which derives independent economic value from being not generally known or readily ascertainable through proper means."). Whether a trade secret exists is a question of fact. *CAE Integrated*, 44 F.4th at 262. TUTSA's definition of "trade secret" is nearly identical to the DTSA's definition, and both definitions require that the information meet the two-prong test identified above (i.e., the owner took reasonable measures to keep the information confidential and the information derives independent economic value from being secret). *Compare* TEX. CIV. PRAC. & REM. CODE § 134A.002(6) *with* 18 U.S.C. § 1839(3).

Providence contends that Defendants violated TUTSA by misappropriating its customer lists, compensation information, and branch-specific financial data. Defendants argue that the compensation and branch-specific financial information at issue do not constitute trade secrets. They also assert that Providence provided no evidence that any Defendant actually used the alleged trade secrets.

In the Court's Memorandum Opinion and Order on Providence's DTSA claim—which the Court fully incorporates here—the Court granted summary judgment for all Defendants after concluding that (1) Providence's compensation and branch-specific financial information were not trade secrets because they did not derive independent economic value from their secrecy, and (2) Providence failed to show that any Defendant used its purported trade secrets. *Providence Title*, 2024 WL 1932418,

10

at *4–11. As explained above, TUTSA likewise requires a showing of independent economic value and actual use. *See CAE Integrated*, 44 F.4th at 262 ("To succeed on the merits of its misappropriation of trade secrets claim, [the plaintiff] must show that '(1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) the defendant *used* the trade secret without authorization from the plaintiff.'" (quoting *GE Betz*, 885 F.3d at 325)); *see also GE Betz*, 885 F.3d at 327 (affirming summary judgment on a misappropriation claim when "there [was] no evidence of actual use" of the trade secrets). Therefore, for the same reasons Providence's DTSA claim failed, so too does its TUTSA claim. Accordingly, Defendants are entitled to summary judgment.[2]

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendants' motions, (Dkt. #217, #218, #219, #258, #265), are **GRANTED in part**. Specifically, they are **GRANTED** with respect to Providence's Texas Uniform Trade Secrets Act claim, and that claim is hereby **DISMISSED**.

It is further **ORDERED** that the Truly Defendants' Motion to Strike, (Dkt. #317), is **DENIED**. The Truly Defendants' objection is **OVERRULED**.

---

[2] Defendants Mark Fleming, Tracie Fleming, and Kim Sheets-Sheffield request attorney's fees for defending against Providence's misappropriation claim in their motions for summary judgment. (Dkt. #217, #218, #219). However, the Court will not consider Defendants' requests at this time. Instead, Defendants may move for attorney's fees after the Court enters final judgment, in accordance with Federal Rule of Civil Procedure 54(d).

**So ORDERED and SIGNED this 22nd day of August, 2024.**

                                        SEAN D. JORDAN
                                        UNITED STATES DISTRICT JUDGE